# EXHIBIT A

22CV001544
Napa - Civil

CHURCH STATE COUNCIL
Alan J. Reinach, State Bar No. 196899
David G. Steward, State Bar No. 156944,
Of Counsel
2686 Towngate Road
Westlake Village, CA 91359
Phone: 805. 413-7398
Fax:    805. 497-7099
Email: ajreinach@churchstate.org.
Email: 3angelsprosecutor@gmail.com

FILED
12/16/2022 11:57 AM
Clerk of the Napa Superior Court
By: Rudy Arroyo, Deputy

Attorneys for Plaintiff, VICTORIA SHAVLIK

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF NAPA

| | |
|---|---|
| VICTORIA SHAVLIK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WATERMARK RETIREMENT COMMUNITIES, LLC, d/b/a THE WATERMARK AT NAPA VALLEY; WATERMARK SERVICES IV, LLC; Does 1-10.<br><br>Defendants. | Case No.: 22CV001544<br><br>UNLIMITED CIVIL COMPLAINT<br><br>1. Religious Discrimination Gov't Code § 12940(a)<br>2. Retaliation, Gov't Code § 12940(h) and (l)(4)<br>3. Whistleblower Retaliation, Labor Code § 1102.5<br>4. Failure to Prevent Discrimination and Harassment<br><br>JURY TRIAL DEMAND |

**INTRODUCTION**

Victoria Shavlik interviewed with Defendant for a position in the Community Life function. She accepted the job as a Community Life Associate based on the promise of promotion to the Director of Community Life position which was expected to be vacant shortly. The Director position offered the possibility of a career, with increased salary and benefits.

1

**SHAVLIK V WATERMARK**                                                                 **COMPLAINT**

When interviewed, Shavlik disclosed that as a Seventh-day Adventist, she would not be available to work on Sabbath, i.e., sundown Friday to sundown Saturday. Shavlik accepted the position with the understanding that the position did not require her to work Saturdays. Nevertheless, when the Community Life Director left shortly after Shavlik was hired, Defendants did not promote Shavlik, as promised, instead, imposing a new schedule requiring her to work Saturdays. When Shavlik refused to violate her religion, Defendants threatened to terminate her. Shavlik did not back down – Defendants did, at least by refraining from terminating her. Instead, Defendants reduced Shavlik's job responsibilities, created a hostile work environment and pressured her to resign. Eventually, realizing that Defendants had reneged on the promise of a career advancement opportunity, Shavlik quit, i.e., was constructively discharged.

Plaintiff Shavlik herein asserts claims of religious discrimination, retaliation, hostile work environment and failure to prevent discrimination all arising from her observance of the Sabbath from sundown Friday to sundown Saturday.

**PARTIES**

1. Plaintiff VICTORIA SHAVLIK is, and was at all relevant times, a California resident, living in Napa County.

2. Defendant WATERMARK RETIREMENT COMMUNITIES, LLC, d/b/a THE WATERMARK AT NAPA VALLEY, is a foreign corporation duly registered to conduct business in the State of California, and an employer as defined by the California Government Code, and at all times relevant herein, employed Plaintiff Shavlik from August 31, 2021 until February 28, 2022.

3. Defendant THE WATERMARK AT NAPA VALLEY, is a foreign corporation duly registered to conduct business in the State of California, and an employer as defined by

2

**SHAVLIK V WATERMARK**　　　　　　　　　　　　　　　　　　　　　　**COMPLAINT**

the California Government Code, and at all times relevant herein, employed Plaintiff Shavlik from August 31, 2021 until February 28, 2022.

4. Defendant WATERMARK SERVICES IV, LLC is a foreign corporation duly registered to conduct business in the State of California, and an employer as defined by the California Government Code, and at all times relevant herein, employed Plaintiff Shavlik from August 31, 2021 until February 28, 2022. Hereinafter, all of the Watermark Defendants are simply referenced as "Defendant."

5. Defendant DOES 1-10 are other individuals or entities, presently unidentified, that upon information and belief are also engaged, directly or indirectly, in the conduct giving rise to this Complaint. On information and belief, Defendants act as agents of one or more of each other relative to the subject matter of this Complaint.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under California's Fair Employment and Housing Act, as the Defendant and its acts or omissions are covered as employer acts or omissions under that statute. (See Gov. Code §§ 12926 (d) & 12965(b)).

7. Plaintiff has met the jurisdictional prerequisites, as she filed a timely administrative complaint with the California Civil Rights Department and obtained a Notice of Right to Sue, see Exhibit A attached.

8. Venue is proper because Napa County is the county where Defendant employed Plaintiff, and where the unlawful practices were committed.

9. Plaintiff demands a jury trial.

## STATEMENT OF FACTS

10. Plaintiff Victoria Shavlik is a Seventh-day Adventist, who observes the Sabbath from sundown Friday to sundown Saturday.

11. One of the important teachings of the Seventh-day Adventist Church is to observe the

3
**SHAVLIK V WATERMARK**                                            **COMPLAINT**

Sabbath as a day of rest, during which secular work is not to be performed. Seventh-day Adventists believe that the obligation to refrain from secular work on the Sabbath was established by the Creator, not by the church, and that individuals are directly responsible to God for their obedience or disobedience.

12. Sabbath observance is important to Seventh-day Adventists for many reasons, including: (a) that God rested on the seventh-day Sabbath after He created the world in six days [*See* Genesis 2:2-3]; (b) that God reminds man to observe the Sabbath, through rest and worship, in the Ten Commandments to honor Him as the Creator [*See* Exodus 20:8-11, Jeremiah 17:22]; and (c) that Jesus rested on the Sabbath when He came to show man how to live and after He redeemed mankind by His death, He asks mankind to observe the Sabbath as a sign that mankind is sanctified from sin [*See* Exodus 31:13; Isaiah 56:2; Ezekiel 20:12-20; Mark 15:42-44; Luke 23:54-56; and John 19:31].

13. Unlike many other Christian churches, members of the Seventh-day Adventist Church celebrate the Sabbath from sundown on Friday until sundown on Saturday.

14. Observance of the Sabbath is reflected in the name of the church, i.e., "Seventh-day," and is included among the church's fundamental beliefs, listed as number 20:

> The beneficent Creator, after the six days of Creation, rested on the seventh day and instituted the Sabbath for all people as a memorial of Creation. The fourth commandment of God's unchangeable law requires the observance of this seventh-day Sabbath as the day of rest, worship, and ministry in harmony with the teaching and practice of Jesus, the Lord of the Sabbath. The Sabbath is a day of delightful communion with God and one another. It is a symbol of our redemption in Christ, a sign of our sanctification, a token of our allegiance, and a foretaste of our eternal future in God's kingdom. The Sabbath is God's perpetual sign of His eternal covenant between Him and His people. Joyful observance of this holy time from evening to evening, sunset to sunset, is a celebration of God's creative and redemptive acts. (Gen. 2:1-3; Ex. 20:8-11; Luke 4:16; Isa. 56:5, 6; 58:13, 14; Matt. 12:1-12; Ex. 31:13-17; Eze. 20:12, 20; Deut. 5:12-15; Heb. 4:1-11; Lev. 23:32; Mark 1:32.)

15. Shavlik was hired as community life associate by Defendants, a senior retirement community, on or about August 31, 2021. The written job description for Watermark's community life associate included helping in the planning and organizing of activity programs, parties, games, special events and outings. In fact, Defendant stressed in an email that areas of need included planning outdoor excursions and events, activities for those in independent living and calendaring activities.

16. During the job interview process, Defendant expressed much enthusiasm about improvements Shavlik would bring to community life at Watermark, especially regarding elevated events and outings. In fact, Defendant even invited Shavlik to list ten new ideas if the budget was no concern, to which Shavlik gave very creative responses. The dialogue sent a strong message that Defendant was already viewing Shavlik as the one to lead this department.

17. During the job interview process, Shavlik told Defendant she is a Seventh-day Adventist and does not work during Sabbath hours, from Friday sundown until Saturday sundown. The interviewers, including Watermark's human resource director, executive director and regional community life director, agreed to respect and accommodate this religious requirement. In fact, the executive director assured Shavlik he understood her Sabbath requirement, as he had attended high school at the same Seventh-day Adventist academy (Rio Lindo Adventist Academy) she had attended.

18. During the interview process, Defendant informed Shavlik that the community life director position should be opening soon and they planned to promote her into that position. Shavlik asked Defendant if she would be made the new director when the position became available. Defendant said "yes." Shavlik relied on this promise in

deciding to accept the lower paying Associate position, expecting the opportunity for career advancement within a very short time.

19. Shavlik also interviewed with Kelly Ording, Regional Director for Community Life. Ording invited Shavlik to interview for the Director position, and that was the subject of the interview itself.

20. Defendant induced Shavlik to accept the Associate position by promising to promote her to director. The director position involved greater responsibility, paid considerably more than the associate position and included a better benefits package. Given the high cost of living in the Napa Valley, the higher pay was an important incentive to induce Shavlik to work for Defendant.

21. Shavlik's schedule when first hired was Sunday through Thursday, which accommodated her Sabbath.

22. A fews days after Shavlik began work, Defendant fired the community life director, creating a vacancy for that post.

23. Defendant's executive director and human resource director both strongly encouraged Shavlik to apply for the community life director position, telling her it was merely a legal formality – that they intended to hire her for the position. Shavlik did apply.

24. Yet, instead of interviewing Shavlik for the Director position, or promoting her to the position, Defendant made an abrupt about face, and on September 22, 2021, changed Shavlik's schedule to require her to work Tuesday through Saturday.

25. Shavlik protested the arbitrary change in her schedule. She told Defendant she had been up front about her Sabbath observance from the very beginning and would not now work on Saturdays.

26. During this meeting, Kelly Ording, the Regional Community Life Director, repeatedly informed Shavlik that if she did not agree to work on Saturdays, she should submit her

6
**SHAVLIK V WATERMARK**                                                                 **COMPLAINT**

resignation by the end of the day. Defendant intimidated Shavlik and threatened her job if she did not comply with a work schedule that would violate her conscience and cause her to disobey God. Shavlik remained resolute in honoring God and made it clear that she would not work Saturdays, despite the threat.

27. Prior to hiring Shavlik, Shavlik was informed and believes that Defendant had assigned staff outside the Community Life department to provide coverage for Saturday programs and activities, as they continued to do during Shavlik's employment.

28. Shavlik informed Defendant in writing that she was asserting her right to religious accommodation of Sabbath observance under Title VII of the Civil Rights Act of 1964 and under California law.

29. The following day, September 23, 2021, Defendant posted a job opening on its website for the community life associate position -- Shavlik's position!

30. Shavlik saw the job posting and understood that she would be replaced.

31. On September 23rd, Defendant summoned Shavlik into a meeting with three regional directors which opened with the line "So as you know, we are open seven days a week." An alleged emergency at another location caused an abrupt end to the meeting, but it still served to intimidate Shavlik – the clear implication was that she needed to be available to work on Saturdays.

32. When Shavlik did not back down and agree to work Saturdays, Ording began to retaliate against Shavlik and harass her. Ording substantially limited Shavlik's job duties and became controlling and micro-managing. Shavlik was relocated from the community life office on the first floor, accessible to residents who often stopped by to chat and interact, to a literal closet on the second floor that residents could not find. Shavlik's office was given to the head of transportation who had no real reason to have one of the only front facing offices on the first floor. Shavlik's office also lacked more than the bare minimum,

desk and computer. Shavlik also began to be shunned and isolated by other department heads, reluctant to interact with her.

33. Although the written job description required Shavlik to assist in planning and directing activity programs and special events, Ording emailed Shavlik instructing her *not* to plan the upcoming calendar and that she would be permitted only 15-30 minutes of office time at the beginning and end of the day.

34. Ording further directed Shavlik that throughout the day she was to station herself at common areas and essentially babysit residents. This constituted a rather sudden and dramatic change in the terms and conditions of Shavlik's employment.

35. On September 27, 2021, Defendant conducted a pro forma interview of Shavlik for the position of community life director.

36. Shavlik understood from the manner in which the interview was conducted, and what was told her, that Defendant had no intent to actually consider her for the position – it was just a formality – going through the motions.

37. At the conclusion of the interview, Shavlik was told not to expect an offer – that Defendant wanted to make sure it had "the right person for the job."

38. Shavlik reached out to Watermark's regional Human Resources office to complain of discrimination and harassment, but in response, received only a dismissive email stating that the matter had been resolved.

39. On information and belief, Defendant failed to fulfill its obligation to investigate Shavlik's complaints, or to take any remedial action to prevent future discrimination or harassment. Shavlik herself was never interviewed about her complaints. .

40. Defendant's policies also provided the opportunity to complain to a third party, Lighthouse Hotline, run by Syntrio, Inc. Sometime prior to October 11, 2021, Shavlik

also filed a report about her discrimination and harassment concerns with Lighthouse. Lighthouse in turn notified Defendant of the report.

41. When Shavlik emailed Lighthouse for an update on October 11, Lighthouse did email her the next day, stating that "The company has not made any notes on this report. We have submitted a status update request and will contact you when the company responds."

42. Shavlik never heard anything further with respect to any investigation Lighthouse may have conducted, but on information and belief, Defendant never responded to her complaint.

43. On October 21, 2021 Defendant informed Shavlik that it would not be promoting her to the Community Life Director position because it had "more qualified candidates" in whom they were interested.

44. Notwithstanding this representation, Defendant hired no one to fill the position by the time of Shavlik's constructive discharge the following February.

45. During the October 21st meeting, Stefanie Thune, Defendant's Regional Executive Director, proceeded to harass and belittle Shavlik and blithely state she did not understand why Shavlik was upset (about not being promoted and the conflict over the Sabbath). When Shavlik tried to explain her point of view, Thune was very disrespectful, rolled her eyes, and spoke in an exasperated tone. Thune said she did not want to hear about Shavlik's situation any longer, or that Shavlik had been filing any reports/complaints - referring to the Lighthouse report, apparently.

46. Thune displayed a hostile and discriminatory attitude toward Shavlik's right to religious accommodation, and right not to be retaliated against for seeking religious accommodation, or for complaining about illegal discrimination and harassment.

47. Both by her attitude and remarks, Thune communicated to Shavlik that Defendant's corporate management was approving of the harassing and discriminatory conduct Shavlik had been complaining about.

48. Defendant also informed Shavlik that being scheduled to work on a particular day, but refusing to show up, equates to being fired, which served to further harass her.

49. Notably, for the remainder of Shavlik's employ, Defendant hired no one for the community life director position. Shavlik was not passed over due to a more qualified candidate but because of blatant religious discrimination.

50. On October 22, 2021 Defendant sent a follow-up email to the October 21st meeting. The email stated: "Watermark has listened and review (sic) your requests for accommodations but is unable to make any promises or guarantees with regard to your schedule. We will endeavor to accommodate your requests, but as a business that is open 24/7, we have to be able to schedule associates based on the needs of the community. Should you be asked to work on a Saturday, and choose not to, and there is no other replacement option for your schedule that day, this refusal to work as scheduled will be investigated and potentially handled per our disciplinary policy."

51. The email also accused Shavlik of acting in a way that warranted a warning that she not be "argumentative, disrespectful or insubordinate" with management. Furthermore, Defendant expressed an opinion that it did not seem Shavlik was "ready to move on from the issues we have attempted to resolve amicably."

52. Shavlik then contacted attorney Alan Reinach, General Counsel of the Church State Council, an organization sponsored by Shavlik's denomination. Reinach wrote to Defendant on October 25, 2021 outlining the religious discrimination and harassment Shavlik had complained about.

53. Although Defendant did not reply to Reinach's letter, shortly after receiving the lawyer's letter asserting that Defendant was violating Shavlik's rights, Defendant emailed Shavlik informing her she would not be required to work on Sabbath.

54. Despite backing off on the threat to terminate Shavlik for not working on Sabbath, Defendant continued to make Shavlik's work environment hostile and unwelcome. In December, 2021 Defendant issued Shavlik a disciplinary letter that was unfounded, petty and harassing. The issue concerned Shavlik's efforts (beginning in late September) to gain a subscription service to entertain the residents.

55. By its actions, Defendant effectively communicated to Shavlik that she was not wanted, there was no career for her there, no opportunity for advancement, and they wanted her to quit.

56. Shavlik got the message. After suffering months of discrimination, retaliation, and a hostile work environment, and realizing she had no future with Watermark – no opportunity for an actual career, Shavlik resigned her position and sought employment elsewhere. Her last day of work at Watermark was February 28, 2022.

## FIRST CAUSE OF ACTION
### Religious Discrimination/Disparate Treatment/Failure to Promote
(Gov. Code §12940(a))
Against ALL Defendants

57. Plaintiff incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

58. Government Code § 12940 (a) provides it is unlawful "[f]or an employer, because of ...religious creed... to discriminate against a person in compensation or in terms, conditions, or privileges of employment," including promotional opportunity.

59. As alleged herein, Defendant discriminated against Shavlik on account of her religion by pressuring her to violate her faith and work on Sabbath, by retaliating against her for refusing to violate her faith, by subjecting Shavlik to a hostile work environment on

11

SHAVLIK V WATERMARK                                                    COMPLAINT

account of her refusal to violate her faith, and by failing and refusing to promote Shavlik to the Director position promised to her at the time of her hiring, a promise Shavlik relied upon in deciding to accept the job.

60. Also, on information and belief, Defendant treated Shavlik differently than another employee who was granted a religious accommodation not to work on Sabbath without suffering hostility or retaliation on account of requesting religious accommodation.

61. Plaintiff's religious practice was a substantial motivating factor with respect to Defendant's discriminatory, retaliatory and harassing conduct, as well as Defendant's decision to renege on its promise to promote Shavlik to the Director position.

62. As a direct and proximate result of Defendant's discriminatory conduct, as alleged herein, Plaintiff Shavlik has suffered harm in the form of past and future lost wages and benefits and other pecuniary loss, plus interest thereon, including but not limited to the loss of the promised promotion to the Director position.

63. As a further direct and proximate result of Defendant's discriminatory conduct against Plaintiff Shavlik, as alleged above, Plaintiff has been harmed in that she has suffered humiliation, mental anguish, and emotional and physical distress in an amount according to proof.

64. The conduct complained of herein was carried out by directors, officers or managing agents of Defendant, and was done with malice, oppression or fraud. Specifically, Defendant knew that discrimination on the basis of religion is unlawful and harmful to Plaintiff and to the public. Despite this, Defendant intentionally discriminated against Plaintiff in discriminating against, retaliating against, and failing to promote her, in a manner that was cold, callous, cruel and despicable. Accordingly, Plaintiff seeks exemplary and punitive damages in an amount according to proof at trial, but no less than

an amount sufficient to punish Defendant and set an example in order to deter such malicious and despicable conduct in the future.

65. California Code of Civil Procedure § 1021 provides that attorney's fees are recoverable in an action for which they are specifically provided by statute. Plaintiff seeks an award of reasonable attorney's fees and costs, pursuant to Government Code § 12965(b), based on an appropriate lodestar rate, together with a multiplier as this court deems just and proper.

## SECOND CAUSE OF ACTION
### Retaliation
(Gov. Code §§ 12940(h) and 12940(l)(4)
Against ALL Defendants

66. Plaintiff realleges and incorporates herein by reference all of the above paragraphs as though fully set forth herein.

67. **Government Code § 12940, subdivision (h)** provides it is an unlawful employment practice "[f]or any employer ... to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

68. **Government Code § 12940, subdivision (l)(4)** states, in addition to the employee protections enumerated under subdivision (h), it is unlawful for an employer to" retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted."

69. Plaintiff Shavlik engaged in protected activities, including but not limited to:
    a. Requesting religious accommodation, both orally and in writing;
    b. Complaining to Defendant via human resources about religious discrimination;
    c. Complaining to Lighthouse about religious discrimination;

70. When Shavlik engaged in the protected activities listed above, Defendant retaliated by refusing to promote her to the director position as Defendant previously promised, and

13

further retaliated against her by substantially changing her job duties, removing important duties, micro- managing her activities, and creating a hostile work environment.

71. Shavlik suffered adverse employment actions both in being denied the promised promotion, and then being constructively discharged.

72. As a direct and proximate result of Defendant's retaliation against Plaintiff, as alleged herein, Plaintiff has suffered harm in the form of past and future lost wages and benefits and other pecuniary loss, plus interest thereon.

73. As a further direct and proximate result of Defendant's retaliation against Plaintiff, as alleged above, Plaintiff has been harmed in that she has suffered humiliation, mental anguish, and emotional and physical distress, in an amount according to proof.

74. The retaliation complained of herein was carried out by managing agents of Defendant, and was done with malice, oppression or fraud. Defendant's supervisors intentionally retaliated against Plaintiff in a manner that was cold, callous, cruel and despicable. Accordingly, Plaintiff seeks exemplary and punitive damages in an amount according to proof at trial, but no less than an amount sufficient to punish Defendant and set an example in order to deter such malicious and despicable conduct in the future.

75. California Code of Civil Procedure § 1021 provides that attorney's fees are recoverable in an action for which they are specifically provided by statute. Plaintiff seeks an award of reasonable attorney's fees and costs, pursuant to Government Code § 12965(b), based on an appropriate lodestar rate, together with a multiplier as this court deems just and proper.

### THIRD CAUSE OF ACTION
### Whistleblower Retaliation
Labor Code. Code § 1102.5
Against ALL Defendants

76. Plaintiff realleges and incorporates herein by reference all of the above paragraphs as though fully set forth herein.

14

SHAVLIK V WATERMARK                                                                                    COMPLAINT

77. <u>Labor Code § 1102.5</u> makes it unlawful for an employer to retaliate against an employee who complains about conduct believed to be illegal.

78. Plaintiff Shavlik repeatedly engaged in activities protected by this provision by opposing discrimination and the employer's failure to accommodate her Sabbath observance, challenging such conduct as illegal, and reporting discrimination to Human Resources and to the third party HR company Lighthouse.

79. Defendant violated Shavlik's rights to be free of retaliation for reporting illegal conduct, as alleged herein, by its conduct in denying her the promised job promotion to the Director position, by harassing her to work on Sabbath; by reducing her job duties and responsibilities and placing her in a demeaning "babysitting" role; by micromanaging her work, by issuing her unwarranted discipline, and finally, by constructively discharging Shavlik.

80. As a direct and proximate result of Defendant's retaliation against Plaintiff, as alleged herein, Plaintiff has suffered harm in the form of past and future lost wages and benefits and other pecuniary loss, plus interest thereon.

81. As a further direct and proximate result of Defendant's retaliation against Plaintiff, as alleged above, Plaintiff has been harmed in that she has suffered humiliation, mental anguish, and emotional and physical distress, in an amount according to proof.

82. The retaliation complained of herein was carried out by managing agents of Defendant, and was done with malice, oppression or fraud. Defendant's supervisors intentionally retaliated against Plaintiff in a manner that was cold, callous, cruel and despicable. Accordingly, Plaintiff seeks exemplary and punitive damages in an amount according to proof at trial, but no less than an amount sufficient to punish Defendant and set an example in order to deter such malicious and despicable conduct in the future.

83. California Code of Civil Procedure § 1021 provides that attorney's fees are recoverable in

an action for which they are specifically provided by statute. Plaintiff seeks an award of reasonable attorney's fees and costs, pursuant to Labor Code § 1102.5(j), based on an appropriate lodestar rate, together with a multiplier as this court deems just and proper.

84. Labor Code 1102.5(f) imposes a civil penalty not to exceed ten thousand dollars ($10,000) for each violation of this section. Plaintiff herein seeks the imposition of the civil penalty in the maximum amount permissible under the statute.

### FOURTH CAUSE OF ACTION
**Failure to Prevent Discrimination and Harassment**
(Gov. Code § 12940(k))
Against ALL Defendants

85. Plaintiff realleges and incorporates herein by reference all of the above paragraphs as though fully set forth herein.

86. Government Code § 12940, subdivision (k) makes it unlawful for an employer to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

87. Defendant failed to take all reasonable steps to prevent discrimination and harassment against Plaintiff Shavlik on the basis of her religion, but instead subjected Plaintiff to harassment and discrimination.

88. As a direct and proximate result of the discriminatory actions of Defendant, as alleged herein, Plaintiff has suffered harm in the form of past and future lost wages and benefits and other pecuniary loss, plus interest thereon.

89. As a further direct and proximate result of Defendant's discriminatory actions against Plaintiff, as alleged above, Plaintiff has been harmed in that she has suffered humiliation, mental anguish, and emotional and physical distress in an amount according to proof.

90. The conduct complained of herein was carried out by directors, officers or managing agents of Defendant, and was done with malice, oppression or fraud. Specifically,

Defendant knew that discrimination on the basis of religion is unlawful and harmful to Plaintiff and to the public. Despite this, Defendant intentionally discriminated and retaliated against Plaintiff in a manner that was cold, callous, cruel and despicable. Accordingly, Plaintiff seeks exemplary and punitive damages in an amount according to proof at trial, but no less than an amount sufficient to punish Defendant and set an example in order to deter such malicious and despicable conduct in the future.

91. California Code of Civil Procedure § 1021 provides that attorney's fees are recoverable in an action for which they are specifically provided by statute. Plaintiff seeks an award of reasonable attorney's fees and costs, pursuant to Government Code § 12965(b), based on an appropriate lodestar rate, together with a multiplier as this court deems just and proper.

### PRAYER FOR RELIEF

Wherefore, Plaintiff Victoria Shavlik prays that this Court order the following relief:

1. Order the following declaratory relief: Declaring that Defendant's actions herein violated Plaintiff's rights to be free of religious discrimination, harassment and retaliation pursuant to the California Fair Employment and Housing Act.

2. Order all available injunctive relief, including at least:
   a. Order Defendant to adopt a religious discrimination and accommodation policy consistent with Government Code § 12940, subd. (l)(1);
   b. Order Defendant to conduct management and employee training with respect to religious accommodation, religious discrimination, and harassment; and to report to the Court with respect to the training conducted within a reasonable time as this court shall determine;

3. The Court to retain jurisdiction with respect to the implementation of injunctive relief.

4. Order Defendant to pay Plaintiff the following damages:

a. Compensatory economic damages including but not limited to back pay, front pay, lost value of benefits, costs of appropriate medical treatment (if any), and costs of finding replacement employment, in an amount according to proof at trial.

b. Compensatory non-economic damages including but not limited to past and future pain, suffering and emotional distress in an amount according to proof at trial.

c. Punitive damages sufficient to deter similar conduct in the future and set an example for others who may believe such unlawful conduct appropriate, in an amount according to proof at trial.

5. The Court to assess a civil penalty in the amount of ten thousand dollars ($10,000) pursuant to Labor Code 1102.5(f);

6. The Court to award Plaintiff Attorney's fees and costs of suit herein pursuant to Government Code section 12965(b), C.C.P. §1021, Government Code § 12965, Labor Code § 1102.5(j) and any other relevant law, with an appropriate multiplier as deemed appropriate according to proof, as well as prejudgment interest on any damages awarded.

7. Additional relief as the court deems just and proper.

DATED this 15th day of December, 2022.

Respectfully submitted,

CHURCH STATE COUNCIL

By: _____
Alan J. Reinach, Esq.

**SHAVLIK V WATERMARK**                                     18                                     **COMPLAINT**